HAYWARD PLLC
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Tony Rojas, Pamela Krause, Peter Krause,*
*Kasie Cameron-Perez, Mario Perez, and Eberardo Duarte*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| PHP AGENCY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 3:21-cv-00418-X |
| | § | |
| JOSE MARTINEZ aka TONY MARTINEZ, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

**CONTRACTOR DEFENDANTS'**
**BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

1

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................ 3

**I.    INTRODUCTION AND FACTUAL SUMMARY** ................................................... 6

**II.   STANDARD OF REVIEW** .................................................................................... 8

**III.  ARGUMENT** ........................................................................................................ 9

  A.  California Law Should Apply to the Parties' Dispute, and It Precludes PHP's Claims ...... 9

    *(i)   If PHP attempts to rely on a contractual choice-of-law clause, California law should apply* ........................................................................................................................ 10

    *(ii)  California's relationship to the parties and transaction is substantially greater than that of Texas* ............................................................................................................ 11

    *(iii) California has a materially greater interest than Texas in the subject of this dispute* 13

    *(iv)  Applying Texas law to the Contractor Defendants violates California's fundamental public policy against restraints from engaging in a profession* ............................ 13

    *(v)   Without a choice-of-law clause, an analysis of applicable law confirms that California law should apply* ................................................................................... 15

  B.  PHP Fails to State a Claim upon which Relief Can Be Granted with Respect to the Alleged Breach of Contract Claims (Counts One, Two, Three, Four) ..................................... 16

    *(i)   Count One* ..................................................................................................... 17

    *(ii)  Count Two* ..................................................................................................... 18

    *(iii) Count Three* .................................................................................................. 19

    *(iv)  Count Four* .................................................................................................... 20

  C.  PHP Fails to State a Claim upon which Relief Can Be Granted under Texas and California Law with Respect to Its Claims for Defamation (Count Seven) ............................... 21

    *(i)   PHP fails to state a claim for defamation under Texas law* ....................... 21

    *(ii)  PHP fails to state a claim for defamation under California law* ................. 22

  D.  PHP's Tortious Interference Claims (Counts Six and Eight) Fail to State a Claim under Texas or California Law ........................................................................................................ 23

    *(i)   PHP fails to state a claim for tortious interference under Texas law* ........ 23

    *(ii)  PHP fails to state a claim for tortious interference under California law* ................ 25

  E.  PHP Fails to State a Claim upon which Relief Can Be Granted with Respect to the Alleged Violations of the Defense of Trade Secret Act and Uniform Trade Secret Act (Counts Five and Nine) .................................................................................................................... 26

  F.  In Addition to the Reasons Stated Above, PHP's Tort Claims Should Be Dismissed Because They Are Not Identifiable nor Distinct from PHP's Breach of Contract Claims ....... 27

**IV.   CONCLUSION** ................................................................................................. 28

# TABLE OF AUTHORITIES

## Cases

*All Am. Tel., Inc. v. USLD Commc'ns., Inc.*, 291 S.W.3d 518 (Tex. 2009) ......................... 23, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. *passim*

*Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296 (5th Cir. 2016)..................................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. *passim*

*Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001) ...................................................... 24

*Busch v. Viacom Inter., Inc.*, 477 F. Supp. 2d 764 (N.D. Tex. 2007)........................... 22

*Butowsky v. Folkenflik*, 2019 WL 2518833, at *1 (E.D. Tex. Apr. 17, 2019)................ 22

*Certain Underwriters at Lloyd's London v. Real Estate Prof'ls Ins. Co.*, No. CV 06-4783 CASJ
    WJX, 2007 WL 4249078, at *1 (C.D. Cal. Nov. 26, 2007)..................................... 23

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. 11-1420, 2012 WL 43366, at *1
    (S.D. Tex. Jan. 9, 2012) ............................................................................. 27

*Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787 (Tex. App. 2000) ................................... 28

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (Cal. Ct. App. 1995) ............ 25

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 .......................................... 9, 10, 14

*Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, 2010 WL 2757523, at *1
    (S.D. Tex. July 13, 2010).......................................................................... 22

*Edwards v. Arthur Andersen LLP*, 189 P.3d 285 (Cal. 2008) ............................... 14, 15

*Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527 (Tex. App. 2014)). ........... 11

*Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319 (Tex. 2014) .................................. 11

*FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270 (Cal. Ct. App. 2009) .................. 14

*Hernandez v. Wal-Mart Assoc.*, No. EP-06-CA-223-FM, 2006 U.S. Dist. LEXIS 76923, at *1
    (W.D. Tex. Sept. 15, 2006)........................................................................ 22

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ........................... 9

*In re Lipsky*, 460 S.W.3d 579 (Tex. 2015). ........................................................ 22

*Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198 (C.D. Cal. 2004)....................... 22

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986) ............................... 28

*Kasparian v. Cty. of Los Angeles*, 38 Cal. App. 4th 242 (Cal. Ct. App. 1995) ........... 25

*Lee v. Tyco Elecs. Power Sys.*, 2005 U.S. Dist. LEXIS 7328, at *1 (N.D. Tex. Apr. 27, 2005).. 17

*Lewis v. Bank of Am. N.A.*, 343 F.3d 540 (5th Cir. 2003) ...................................... 17

*Mary Kay Inc. v. Woolf*, 146 S.W.3d 813 (Tex. App. 2004) ........................................................ 10

*Merritt, Hawkins & Assocs., LLC v. Caporicci*, No. 05-15-00851-CV, 2016 WL 1757251, at *1 (Tex. App. May 2, 2016) ................................................................................................ *passim*

*Nedlloyd Lines B.V. v. Super. Ct.* (1992) 834 P.2d 1148 (Cal. 1992)) ........................................ 14

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ...................................................................... 22

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002 (N.D. Cal. 2013) ........................................................................................................ 25

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (Cal. 1990) ............................... 25

*Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680 (S.D. Tex. 2011) .. 27

*Roland-Warren v. Sunrise Senior Living, Inc.*, No. 09 CV 1199 JM (WMA), 2009 WL 2406356, at *1 (S.D. Cal. Aug. 4, 2009) ............................................................................... 23

*Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011) ............................ 28

*Smith v. Maldonado*, 72 Cal. App. 4th 637 (Cal. Ct. App. 1999) ............................................... 22

*Spear Mktg, Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015) .................................... 27

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ............................................. 17

*Steinmetz v. Gen. Elec. Co.*, No. 08 CV 1635 JMC (AJB), 2009 WL 2058792, at *1 (S.D. Cal. Jul. 13, 2009) .................................................................................................. 23

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991) ..................................................... 28

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563 (Tex. App. 2007) ............................................................................................................ 24

*Thomas Weisel Partners LLC v. BNP Paribas*, Case No. C 07-6198MHP, 2010 WL 546497, at *1 (N.D. Cal. Feb. 10, 2010) ....................................................................................... 14

*TracFone Wireless, Inc. v. Carson,* No. 3:07-CV-1761-G, 2008 U.S. Dist. LEXIS 68673, at *1 (N.D. Tex. Aug. 28, 2008) ........................................................................................ 22

*VL Sys., Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708 (Cal. Ct. App. 2007) ................................. 14

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001) .................................................. 23

*Wash. Mut. Bank v. Super. Ct.,* 15 P.3d 1071 (Cal. 2001) ......................................................... 14

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758 (5th Cir. 2016) .............................................. 9, 16

*Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (Cal. Ct. App. 1996) 25

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568 (Tex. 1998) ....................................................... 22

*ZL Techs., Inc. v. Gartner, Inc.*, No. CV 09-02393 JF (PVT) 2010 WL 1801582, at *1 (N.D. Cal. May 3, 2010). ............................................................................................... 23

**Statutes and Other Authorities**

18 U.S.C. § 1836 ............................................................................................... 26
18 U.S.C. § 1839(5) .......................................................................................... 26
CAL. BUS & PROF CODE § 16600 ...................................................................... 14
CAL. CIV. CODE § 45 .......................................................................................... 22
CAL. CIV. CODE § 46 .......................................................................................... 22
TEX. PENAL CODE § 31.05(a)(4) ........................................................................ 27

**Secondary Sources**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971) ................................... *passim*

**TO THE HONORABLE BRANTLEY STARR, UNITED STATES DISTRICT JUDGE:**

NOW COME defendants Tony Rojas, Pamela Krause, Peter Krause, Kasie Cameron-Perez, Mario Perez, and Eberardo Duarte (collectively, the "Contractor Defendants"), by and through the undersigned counsel, submitting this brief (the "Brief") in support of their *Motion to Dismiss Plaintiff's Claims Set Forth in the First Amended Complaint* (the "Motion to Dismiss") seeking dismissal of each and every one of the claims (collectively, the "Claims") asserted against the Contractor Defendants in the *First Amended Complaint* [Docket No. 4] (the "Complaint") filed by plaintiff PHP Agency, Inc. ("PHP" or "Plaintiff").   In support of the relief requested in the Motion to Dismiss, the Contractor Defendants respectfully state the following:

## I.   INTRODUCTION AND FACTUAL SUMMARY

1.     Plaintiff PHP is a multi-level—or pyramid—marketing company in the insurance industry.  PHP recruits independent contractor insurance agents ("Independent Contractors") using numerous false promises, including misrepresenting existing agents' income and making promises about business opportunities and lead sources that never pan out.  PHP's business model involves at least two prongs:  an insurance-selling prong and an agent-recruiting prong.

2.     For the insurance-selling prong, PHP instructs its Independent Contractors to obtain a state-issued life insurance license in their resident state to sell life insurance at the Independent Contractor's expense.  PHP requires the Independent Contractors to provide a list of at least twenty-five "warm contacts" that PHP uses as leads to attempt to sell insurance products to them. Upon the sale of an insurance policy, the insurance carrier pays PHP a commission, and PHP pays a portion of the commission to the Independent Contractor that sold the policy.

3.     With respect to the recruiting prong, PHP's Independent Contractors are further instructed and encouraged by PHP to recruit other agents to build a pyramid organizational

structure.  Those Independent Contractors in turn tell new recruits the same lies about income and business opportunities that PHP told them.  When a recruit becomes affiliated with PHP, he or she is placed in a hierarchy so that commissions generated by newly recruited Independent Contractors ("Downline Agents") can be split up among the selling agent, the Independent Contractors who recruited them ("Upline Agents"), and PHP, who serves as the ultimate upline for all of its Independent Contractors.

4.      The Contractor Defendants—*all of whom reside in California*—are licensed insurance agents who conduct their business in California and, among other things, sell insurance products in California to California residents.  They are independent contractors and work separately from one another—*i.e.*, none of them are employees of one another's entities or businesses.  The Contractor Defendants sell life insurance products underwritten by numerous insurance carriers so that they may present a number of insurance products from any of the carriers to serve potential customers' needs.  In other words, they operate their own businesses and do so in California.

5.      In its Complaint, PHP alleges that the Contractor Defendants were previously Independent Contractors with PHP and that any such business relationship terminated over the course of the last few years.  PHP also alleges that the Contractor Defendants purportedly accepted the terms of the *New Associate Agreement* (the "NAA"); however, unbeknownst to the Contractor Defendants, the purported NAA contains extremely broad provisions prohibiting, among other things, solicitation of other PHP agents and restricting any Independent Contractor's ability to sell any insurance products from life insurance carriers that have a business relationship with PHP.  Specifically, PHP asserted in its Complaint that the Contractor Defendants were subject to the NAA's restrictive covenants stating that Independent Contractors "shall not recruit away, induce

or attempt to induce PHP Associates to depart PHP, to sell, or solicit products and services which are competitive with PHP for a period of twenty-four (24) months…. shall immediately resign from all appointments with PHP affiliated insurance companies and cease and refrain from all sales activities with PHP's insurance affiliates and turn over all active client files, leads and applications to PHP."[1]  In essence, PHP is attempting to shut the Contractor Defendants out of the life insurance industry.  Sadly, this follows PHP's well-known playbook.  PHP and its Upline Agents routinely threaten that they will "bury" Independent Contractors in litigation if they leave PHP and will make sure they can never make a living in the insurance industry.  PHP's tactics have even gone so far as to have its Upline Agents or managers threatening violence against Independent Contractors.

6.     The Contractor Defendants deny that (i) the NAA is enforceable, (ii) they have violated any alleged terms of the NAA, and (iii) they have caused harm to PHP.  Setting aside those denials for purposes of the Contractor Defendant's Motion to Dismiss, the NAA is not enforceable against the Contractor Defendants as a matter of law.  As acknowledged in the Complaint, the Contractor Defendants are all California residents,[2] and the restrictive covenants PHP seeks to enforce here in this lawsuit are not enforceable against California residents.  For the reasons stated below, PHP's Claims are due to be dismissed.

## II.     <u>STANDARD OF REVIEW</u>

7.     A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "<u>FRCP</u>") is due to be granted when it appears a plaintiff can prove no set of facts in support of its claim that would entitle it to relief.  "[T]he pleading standard Rule

---

[1] Compl. ¶¶ 40, 47.

[2] Compl. ¶¶ 4, 9, 10, 11, 12, 13.

8 announced does not require 'detailed factual allegations,' but demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."[3]   FRCP 12(b)(6) tests the legal sufficiency of the complaint, and the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.  To survive such a motion, "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)."[4]   PHP cannot satisfy its burden.

8.      Here, PHP pleads no facts—and it cannot plead any facts—that could preclude the application of California law to the parties' dispute.  As set forth below, California law simply does not support PHP's Claims.  Accordingly, PHP's Claims are due to be dismissed.

### III.   ARGUMENT

### A.   California Law Should Apply to the Parties' Dispute, and It Precludes PHP's Claims

9.      A federal court sitting in diversity applies the choice-of-law rules of the forum state.[5]   Under Texas law, courts should turn to either section 187 or 188 of the Restatement (Second) of Conflicts of Laws (the "Restatement"), depending whether or not there is a contractual choice-of-law provision.[6]   Here, PHP failed to attach to its Complaint any of the purported "contracts" that the Contractor Defendants allegedly breached.[7]   Even so, PHP quotes and refers to the purported NAA that may or may not contain a choice-of-law clause.  Notwithstanding

---

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 768 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

[4] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007).

[5] *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016).

[6] *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677-78 (applying section 187 to the analysis of a contractual choice of law); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016) (applying section 188 to the analysis in the absence of a contractual choice of law).

[7] PHP provided only brief excerpts of these purported "contracts", which allegedly included a choice-of-forum provision (which the Contractor Defendants dispute) that would require the Contractor Defendants to submit to the "jurisdiction and venue in Dallas County, Texas for disputes that may arise."  Compl. ¶ 16.

whether PHP relies on a choice-of-law provision or not, the result is the same:  California law applies.

### (i)     If PHP attempts to rely on a contractual choice-of-law clause, California law should apply

10.     Under Texas law, when a contractual choice of law is at issue, courts follow the section 187 of the Restatement.[8]  According to the Restatement, "a contractual choice of law will be given effect so long as the contract bears a substantial relationship to the chosen state and so long as the parties' choice does not thwart a fundamental policy of the state whose law would otherwise be applied."[9]  The application of these policy factors from the Restatement may compel a court to apply the law of a given state to a contract even where the contract itself contains a contrary choice-of-law-provision.[10]

11.     In *Merritt, Hawkins & Associates, LLC v. Caporicci*, the Texas court of appeals addressed issues remarkably similar to those presented in the case *sub judice*.  In *Caporicci*, the

---

[8] *DeSantis,* 793 S.W.2d at 677-78.  The relevant portion of section 187 of the Restatement states as follows:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

[9] *Mary Kay Inc. v. Woolf,* 146 S.W.3d 813 (Tex. App. 2004) (citing *DeSantis*, 793 S.W.2d at 677 (adopting Rule 187 of the Restatement, "Law of the State Chosen by the Parties")).

[10] *Merritt, Hawkins & Assocs., LLC v. Caporicci*, No. 05-15-00851-CV, 2016 WL 1757251, at *2 (Tex. App. May 2, 2016).

court considered whether California or Texas law governed the enforceability of a noncompetition clause in employment agreements signed by defendants.[11]   The analysis in *Caporicci* was dependent on whether the application of Texas law would be inconsistent with section 187(2)(b) of the Restatement, which provides the parties' choice of Texas law is effective unless: (1) California has a more significant relationship than Texas to the transaction and the parties, (2) California has a materially greater interest than Texas in the determination of the particular issue, and (3) application of Texas law is "contrary to a fundamental policy" of California.[12]   After analyzing these issues, the court in *Caporicci* determined that California law should apply. Analyzing the facts of the case *sub judice* with the same methodology utilized by the court in *Caporicci*, this Court should similarly conclude that California law applies to PHP's Claims.

### (ii)   *California's relationship to the parties and transaction is substantially greater than that of Texas*

12.      In analyzing whether the relationship of the transaction and parties to California was clearly more significant than their relationship to the chosen state of Texas, the *Caporicci* court took into account the place of performance, the location of the parties, the negotiations of the agreement, and the execution of the agreement.[13]   The court concluded that while the transaction and parties bore relations to both states, after weighing the respective interests between California and Texas, the relationship to California was more significant than to Texas.[14] The defendants in *Caporicci* interviewed for their jobs, completed their employment agreements, and

---

[11] *Id.*

[12] *Id.* (citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325–28 (Tex. 2014); *Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 531 (Tex. App. 2014)).

[13] *Caporicci*, 2016 WL 1757251, at *2.

[14] *Id.* at *3.

performed their jobs in California, despite their employer being headquartered in Texas.[15] Unsurprisingly, the court in *Caporicci* concluded that California had the more significant relationship with this case and that California law would govern absent a choice-of-law provision.[16]

13.     In the present dispute, the Contractor Defendants were all California residents at the time the alleged contracts were entered into; in fact, all of the Contractor Defendants remain as California residents as of the filing of this Motion to Dismiss.[17]   Though the Contractor Defendants deny that any of the purported agreements are valid, binding, or enforceable, the Complaint supports the reasonable conclusion that both the Contractor Defendants' purported acceptance of the NAA and their access to PHP's "database" occurred remotely.[18]   It stands to reason that any agreement the Contractor Defendants could have possibly entered into (i) initiated from their home or office computers in the State of California, or (ii) occurred at their homes or offices in the State of California.   As California residents, the Contractor Defendants' solicitation of customers and recruitment of other prospective agents—*i.e.*, the Contractor Defendants' actions taken under the alleged "contract"—occurred in California where they lived and conducted their business activities.   In addition, all business activities related to actions taken by the Contractor Defendants after their business relationship with PHP terminated also took place in California. Based on the Complaint, PHP therefore complains of (i) California residents' actions (ii) taken in California (iii) that purportedly breached contracts that, if agreed to, would have been entered into in California, not Texas.   It is wholly indisputable that the parties and the Claims at issue in the

---

[15] *Id.*

[16] *Id.*

[17] Compl. ¶¶ 4, 9, 10, 11, 12, and 13.

[18] The Contractor Defendants allegedly "enrolled" as associates. Compl. ¶ 27.   After enrollment, the Contractor Defendants purportedly had remote access to electronic software and portions of PHP's database.

case before this Court have a relationship far more significant—and arguably, exclusive—to the State of California.

### (iii)     *California has a materially greater interest than Texas in the subject of this dispute*

14.     As in most states, the business of insurance and the conduct of licensed insurance agents is highly regulated in California.  Among the reasons for such regulation is California's interest in ensuring that its insurance-buying public can rely on knowledgeable insurance producers to accurately describe and market insurance products that fit the needs of prospective insureds.  Enforcement of the restrictive covenants PHP seeks to enforce here undermines that interest.  Specifically, the Contractor Defendants would be effectively banned from selling insurance to California residents in California for two years, despite having a license from the State of California to do so.  Furthermore, enforcement of the NAA would have a chilling effect on the ability of licensed insurance producers—who are independent contractors, not employees—to seek out and accept better, more lucrative opportunities.

15.     Texas, on the other hand, has a less-compelling interest in the subject matter of this dispute.  Undoubtedly, Texas has an interest in providing recourse for foreign entities registered to do business enforcing their contracts.  But that interest is diminished by the fact that the purported solicitation perpetrated by the Contractor Defendants was allegedly directed at California residents and other insurance agents in California.  Thus, it cannot be said that Texas's interests in this litigation exceeds the interests of California.

### (iv)     *Applying Texas law to the Contractor Defendants violates California's fundamental public policy against restraints from engaging in a profession*

16.     California's express public policy forbids the types of restrictions on the Contactor Defendants that PHP seeks to impose here.  In California, the weaker party to an adhesion contract

may avoid enforcement of a choice-of-law provision therein where enforcement would result in substantial injustice, as defined by California law.[19]   Even if the parties agreed to a particular jurisdiction's law, their "freedom [to do so] cannot be unlimited."[20]   Specifically, "they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply."[21]   In *DeSantis,* the Texas Supreme Court clearly noted that virtually every court that has addressed the question of whether enforcement of noncompetition agreements is a matter of fundamental or important state policy has answered in the affirmative.[22]

17.   The court in *Caporicci* sought to determine whether the application of Texas law would be contrary to or violate a fundamental policy of California.[23]   Section 16600 of the California Business and Professions Code states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[24]   Upon review, the court in *Caporicci* recognized that California courts have consistently affirmed that section 16600 "evinces a settled legislative policy in favor of open competition and employee mobility," "protects Californians," "and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice."[25]   In

---

[19] *Wash. Mut. Bank v. Super. Ct.*, 15 P.3d 1071, 1079 (Cal. 2001) (citing *Nedlloyd Lines B.V. v. Super. Ct.* (1992) 834 P.2d 1148 (Cal. 1992)).

[20] *DeSantis*, 793 S.W.2d at 670.

[21] *Id.*

[22] *Id.* at 680.

[23] *Caporicci*, 2016 WL 1757251 at *4.

[24] *See* CAL. BUS & PROF CODE § 16600.

[25] *Caporicci*, 2016 WL 1757251 at *4 (quoting *Edwards v. Arthur Andersen LLP,* 189 P.3d 285, 291 (Cal. 2008)); *see also VL Sys., Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708 (Cal. Ct. App. 2007) (invalidating contractual provision prohibiting "attempt[s] to hire seller's personnel" because it was overly drawn to restrict the mobility of seller's personnel); *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1282 (Cal. Ct. App. 2009) (recognizing that a settlement condition that respondents not hire appellant's employees violated public policy espoused in Bus. & Prof. Code § 16600); *Thomas Weisel Partners LLC v. BNP Paribas*, Case No. C 07-6198MHP, 2010 WL 546497 (N.D. Cal. Feb. 10, 2010) (voiding a non-solicitation provision that prohibited a former employee from hiring his former employer's employees).

contrast, Texas law allows noncompetition clauses which led the court in *Caporicci* to conclude that the application of Texas law would contravene a fundamental policy of California law.[26]

18.     As California residents, the Contractor Defendants are entitled to the public-policy-based protections that their home state affords its residents.[27]   While the Contractor Defendants are classified as independent contractors, it stands to reason that independent contractors like the Contractor Defendants—because they receive no salary or other benefits inherent in the relationship between employer and employee—should be subject to even fewer restraints on their ability to engage in a lawful profession, trade, or business under California law.  Because Texas upholds certain noncompetition clauses and similar restrictive covenants, the application of Texas law to this case would contravene a fundamental policy of California law.[28]

19.     Because (i) California has a substantially and materially greater relationship to the parties and the transaction in the case *sub judice* and (ii) Texas law is contrary to a fundamental public policy of California, California law should govern the parties' dispute.  PHP's Claims flowing from the non-solicitation and non-competition provisions of the referenced NAA (Counts One, Three, Six, and Eight of the Complaint) are due to be dismissed as they are not viable under California law.

**(v)     *Without a choice-of-law clause, an analysis of applicable law confirms that California law should apply***

20.     In the absence of a valid choice of law and/or forum clause, it is up to the court to decide which state's substantive law governs the contractual disputes and which states provide appropriate forums for litigation.  If the parties have not contracted for the application of the law

---

[26] *Caporicci*, 2016 WL 1757251 at *4.

[27] *See Edwards*, 189 P.3d at 291 ("The law protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice") (internal citations omitted).

[28] *See Caporicci*, 2016 WL 1757251 at *4.

of a particular forum, the Restatement provides for the application of the law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties.[29]   To determine the most significant relationship, the Restatement directs the court to pay particular attention to:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.[30]

21.    As previously stated, any agreement the Contractor Defendants could possibly have entered into initiated from their home or office computers in the State of California.   As California residents, the Contractor Defendants' solicitation of customers and recruitment of other prospective agents was to occur in California where they lived and conducted their business activities.   In addition, all business activities related to actions taken by the Contractor Defendants after their business relationship with PHP terminated took place in California as well.   Therefore, under the factors set forth in the Restatement, the most significant relationship to the transaction and the parties of this dispute is clearly held by California.

**B.     PHP Fails to State a Claim upon which Relief Can Be Granted with Respect to the Alleged Breach of Contract Claims (Counts One, Two, Three, Four)**

22.    PHP fails to state a claim against the Contractor Defendants upon which relief can be granted because PHP failed to plead with sufficient particularity enough facts to state a claim for relief that is "plausible on its face."[31]   A court should not accept allegations that are merely

---

[29] *Weber*, 811 F.3d at 771.

[30] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)

[31] *Twombly*, 550 U.S. at 570 (2007); *Iqbal*, 556 U.S. at 663 (2009).

conclusory, unwarranted deductions of fact, or unreasonable inferences.[32]   Moreover, where a plaintiff is suing multiple defendants in one action, a complaint must allege facts to state a claim against each particular defendant.  As the Supreme Court has declared, "unadorned, the-defendant-unlawfully-harmed me accusation[s]" do not suffice.[33]

23.     Assuming PHP is asking the Court to apply Texas law (which is improper for the reasons described above), the elements of a breach of contract claim are: "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach."[34]   Neither the Contractor Defendants nor this Court have any way of discerning from PHP's Complaint (a) whether a valid contract between PHP and the Contractor Defendants exists; (b) whether PHP has performed under any such contract; (c) when or how the Contractor Defendants allegedly breached the contract; and (d) how the Contractor Defendantss alleged actions caused any damage to PHP. The Contractor Defendants and this Court are not required to guess as to these matters.  On its face, the Complaint fails to state a claim upon which relief can be granted with respect to the alleged breach of contract Claims.

   *(i)     Count One*

24.     In the event this Court concludes that Texas law applies rather than California law, the breach of contract allegations in the Complaint stemming from the Contractor Defendants'

---

[32] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[33] *Iqbal*, 556 U.S. at 678 (2009).

[34] *See Lee v. Tyco Elecs. Power Sys.*, 2005 U.S. Dist. LEXIS 7328, at *13 (N.D. Tex. Apr. 27, 2005) (citing *Lewis v. Bank of Am. N.A.*, 343 F.3d 540, 545 (5th Cir. 2003)).

alleged solicitation fails for another reason.[35]   PHP merely referenced and partially quoted a purported contractual provision of the NAA that is the subject of its lawsuit:

> Section 13.7 of the NAA, an Associate "shall not recruit away, induce or attempt to induce PHP Associates to depart PHP, to sell, or solicit products and services which are competitive with PHP for a period of twenty-four (24) months."[36]

25.     PHP fails to allege sufficient factual detail describing the Contractor Defendants' breach of the NAA or PHP's entitlement to relief.   Instead, PHP provides generic, conclusory statements that "[Contractor] Defendants recruited and induced PHP Associates to depart PHP and sell or solicit the sale of products competitive with PHP within the twenty-four-month period prevented by the contract."[37]   PHP did not identify any of these other PHP Agents, nor did PHP identify when, where, or how the alleged solicitation took place.   At best, PHP alleged nothing more than a "guess" that some unspecified conduct took place that PHP believes breached the purported NAA.   PHP's allegations related to the solicitation of its associates are so void of detail related to the alleged wrong that the Contractor Defendants cannot ascertain where, when, or by whom such conduct allegedly occurred.   PHP's allegations fail to comply with the requirements of *Iqbal* and *Twombly*, and the Court should not accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.   Accordingly, Count One of PHP's Complaint is due to be dismissed.

### (ii)     Count Two

26.     In the same conclusory fashion, PHP contends in Count Two of the Complaint that the Contractor Defendants have breached sections 13.2, 13.3, and 13.4. of the NAA.[38]   Again, PHP

---

[35] Of course, if the Court determines that California law applies, the non-solicitation provision is void and unenforceable.

[36] Compl. ¶ 40.

[37] Compl. ¶ 42.

[38] Compl. ¶ 47.

merely references and briefly quotes these sections with limited context while failing to attach the purported "contract(s)" to the Complaint. The entire basis of PHP's Count Two is that the Contractor Defendants allegedly "took" information from PHP which had already been provided as part of the Contractor Defendants' Independent Contractor relationships with PHP and is likely accessible through alternative public means.[39] PHP's allegations simply lump all defendants together, as if they were one entity who allegedly engaged in similar conduct at the same time. Again, these allegations do not comply with the requirements of *Iqbal* and *Twombly* and as a result, Count Two of PHP's Complaint is due to be dismissed.

### (iii)   Count Three

27.   The Contractor Defendants discussed, *supra*, how the non-solicitation and non-competition language contained in the purported NAA is violative of California public policy and, therefore, invalid. In Count Three of the Complaint, PHP seeks to enforce the oppressive terms of section 11.12 of the purported NAA, which would prevent the Contractor Defendants from maintaining any affiliation or contracting relationship with another direct marketing organization.[40] In other words, PHP seeks to bar the Contractor Defendants from the life insurance industry.

28.   The issue once again is that PHP omits any details that would support its Claims. PHP relies "on information and belief" that these purported actions occurred; however, it does not provide anything other than the same conclusory statements made with regards to its other Claims, which amount to nothing more than "a guess" that the alleged actions took place.[41] PHP's allegations again simply lump all defendants together without making any attempt to allege the

---

[39] Compl. ¶ 48.

[40] Compl. ¶ 55.

[41] Compl. ¶ 56.

specific breaches of the NAA by any individual defendant.  Again, these allegations do not comply with the requirements of *Iqbal* and *Twombly*, and the Court should not accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  For these reasons, Count Three of PHP's Complaint is due to be dismissed.

### *(iv)    Count Four*

29.     Similar to the conclusory fashion of the allegations in Counts One, Two, and Three of the Complaint, PHP contends in Count Four that the Contractor Defendants breached section 3.1 of the NAA.  Section 3.1 allegedly required the Contractor Defendants to "conduct [their] Associate's business in a legal, ethical, honest, and fair manner and in the best interest of the Associate's clients and PHP."[42]  PHP again merely references and partially quotes alleged contractual provisions of the NAA while failing to include the purported agreement with its Complaint.  The entire basis of PHP's Count Four seems dependent on the assumption that the Contractor Defendants breached sections 13.2, 13.3, and 13.4 of the NAA, as alleged PHP's Count Two.  PHP fails, however, to allege with any particularity *who* committed these allegedly "illegal, unethical, dishonest, and unfair" acts, *where* the acts occurred, or *when* they occurred.  PHP's allegations again simply lump the Contractor Defendants together with all defendants in this case.  PHP's allegations do not comply with the requirements of *Iqbal* and *Twombly*, and the Court should not accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  PHP has failed to state a claim upon which relief can be granted with respect to Count Four as well, and all of PHP's breach of contract Claims, including Count Four, should be dismissed.

---

[42] Compl. ¶ 63.

**C.**     **PHP Fails to State a Claim upon which Relief Can Be Granted under Texas and California Law with Respect to Its Claims for Defamation (Count Seven)**

30.     Count Seven of PHP's Complaint alleging defamation fails to state a claim against the Contractor Defendants for which relief can be granted because PHP failed to plead sufficient facts with sufficient particularity to constitute a claim for relief that is plausible on its face.  In its Complaint, PHP fails to set forth facts, for example, that identify any of the alleged associates to whom the Contractor Defendants allegedly made defamatory statements.  PHP does not even identify *any particular alleged statement* made by the Contractor Defendants; rather, PHP simply makes generalized allegations that: "Defendants have publicized false statements of fact to Associates. Specifically, Defendants have informed Associates that PHP has no money and was going out of business."[43]

31.     PHP's allegations clearly fail to state a claim of defamation against any of the Contractor Defendants because PHP fails to provide even the simplest of facts, such as (i) when or by whom these alleged defamatory statements were made, (ii) where the alleged defamatory statements were published or spoken, and (iii) to whom the alleged defamatory statements were made.  Regardless of whether the Court applies Texas or California substantive law, PHP failed to state a claim upon which relief can be granted for defamation, as detailed more fully below.

*(i)*     ***PHP fails to state a claim for defamation under Texas law***

32.     In the event the Court determines that Texas law applies to PHP's defamation Claim, the elements of a cause of action for defamation under Texas law are: (1) the challenged broadcast contains assertions of fact about the plaintiff (as opposed to opinion); (2) the challenged assertions of fact are defamatory, injuring the plaintiff's reputation; (3) the challenged assertions

---

[43] Compl. ¶ 88.

of fact are false; (4) defendants acted with actual malice in broadcasting the challenged assertions (or acted with negligence if the plaintiff is deemed a private individual); and (5) plaintiff suffered damages.[44]

33.     To withstand a motion to dismiss, the plaintiff must specifically identify who made the defamatory statements, to whom the statements were made, and the time and place they were made.[45]  PHP's vague assertions of unidentified defamatory statements allegedly made by the Contractor Defendants without regard for the truth are legal conclusions not entitled to assumption of the truth.[46]  Accordingly, PHP's defamation Claim is due to be dismissed.

### (ii)     PHP fails to state a claim for defamation under California law

34.     To succeed on a claim for defamation under California law, a plaintiff must establish (1) an intentional publication to a third party, (2) of a statement of fact, (3) that is false and unprivileged, and (4) has a tendency to injure or cause special damages.[47]  Moreover, each alleged defamatory statement must be identified specifically as to each defendant, although it need not be set forth verbatim, and the plaintiff must plead the substance of the statement.[48]

35.     In the instant case, PHP fails to identify any statement allegedly made by the Contractor Defendants that would support its Claim for defamation. PHP's conclusory allegations

---

[44] *Busch v. Viacom Inter., Inc.*, 477 F. Supp. 2d 764, 774-75 (N.D. Tex. 2007) (referencing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) and *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964)); *Butowsky v. Folkenflik*, 2019 WL 2518833, at *1, *18 (E.D. Tex. Apr. 17, 2019); *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

[45] *TracFone Wireless, Inc. v. Carson,* No. 3:07-CV-1761-G, 2008 U.S. Dist. LEXIS 68673, at *25 (N.D. Tex. Aug. 28, 2008); *Hernandez v. Wal-Mart Assoc.,* No. EP-06-CA-223-FM, 2006 U.S. Dist. LEXIS 76923, at *14-15 (W.D. Tex. Sept. 15, 2006).

[46] *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, 2010 WL 2757523, at *1, *3 (S.D. Tex. July 13, 2010).

[47] *See* CAL. CIV. CODE §§ 45, 46; *see also Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (Cal. Ct. App. 1999).

[48] *See Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1215 (C.D. Cal. 2004) (granting defendants' motion to dismiss defamation claim on the grounds that the plaintiff fails to identify and state the substance of the alleged defamatory statement).

that all of the defendants are liable for defamation are insufficient to state a claim for defamation.[49]

This is consistent with other courts that, relying on *Twombly*, have dismissed defamation claims

that are pled in conclusory terms without a factual basis for plausibility.[50]

36.    In the Complaint, PHP has pled insufficient facts and has, therefore, failed to

"nudge its claims across the line from conceivable to plausible, [and] its complaint must be

dismissed."[51]   As a result, PHP's defamation Claim is due to be dismissed.

**D.    PHP's Tortious Interference Claims (Counts Six and Eight) Fail to State a Claim under Texas or California Law**

*(i)    PHP fails to state a claim for tortious interference under Texas law*

37.    PHP cannot and did not adequately state its Claims against the Contractor

Defendants for tortious interference.    To establish a claim for tortious interference with

existing contracts, a plaintiff must prove: 1) the existence of a contract subject to interference; 2)

willful and intentional interference; 3) that proximately causes damage; and 4) actual damage or

loss.[52]   The party asserting a tortious interference claim must show that the other party's conduct

was either independently tortious or unlawful, meaning that the conduct would violate some other

recognized duty.[53]   If the conduct asserted is breach of contract, the party asserting a claim must

demonstrate that the other party knowingly induced one of the contracting parties to breach

---

[49] *See Iqbal*, 556 U.S. at 678.

[50] *See Roland-Warren v. Sunrise Senior Living, Inc.*, No. 09 CV 1199 JM (WMA), 2009 WL 2406356, at *7-8 (S.D. Cal. Aug. 4, 2009) (citing *Twombly* and its holding that "factual allegations must be enough to raise a right to relief above the speculative level"); *see also Certain Underwriters at Lloyd's London v. Real Estate Prof'ls Ins. Co.*, No. CV 06-4783 CASJ WJX, 2007 WL 4249078, at *13 (C.D. Cal. Nov. 26, 2007) (granting defendant's motion to dismiss defamation claim because the alleged defamatory statements were not sufficiently alleged); *Steinmetz v. Gen. Elec. Co.*, No. 08 CV 1635 JMC (AJB), 2009 WL 2058792, at *5-7 (S.D. Cal. Jul. 13, 2009) (granting motion to dismiss defamation claims because the required elements were not pled); *ZL Techs., Inc. v. Gartner, Inc.*, No. CV 09-02393 JF (PVT) 2010 WL 1801582, at *12 (N.D. Cal. May 3, 2010).

[51] *Twombly*, 550 U.S. at 570.

[52] *All Am. Tel., Inc. v. USLD Commc'ns., Inc.*, 291 S.W.3d 518, 531 (Tex. 2009).

[53] *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

its contractual obligations.[54]  A claim for tortious interference will fail if there was no breach of the underlying contract.[55]

38.     Tortious interference with a prospective business relationship is shown by proving: "(1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., that the defendant's actions prevented the relationship from occurring."[56]

39.     Based on PHP's Complaint, neither the Contractor Defendants nor this Court have any way of knowing (a) the alleged terms of any valid contract between PHP and any third party that is alleged to exist; (b) how the Contractor Defendants; purported actions qualify as willful and intentional interference; (c) when or how each of the Contractor Defendants proximately caused damage to PHP; and (d) what actual damage or loss PHP suffered.  The Contractor Defendants and this Court should not be required to guess as to these matters; rather, PHP should have made sufficient factual allegations in its Complaint to comply with the requirements set forth in *Iqbal* and *Twombly*.  Because PHP failed to do so, PHP's tortious interference with contract and prospective economic advantage Claims were inadequately stated under Texas law and are due to be dismissed.

---

[54] *All Am. Tel.*, 291 S.W.3d at 532.

[55] *Id.*

[56] *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590-91 (Tex. App. 2007) (citing *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001)).

### (ii)     PHP fails to state a claim for tortious interference under California law

40.     Interference with contract claims have been referred to as a species of the broader tort of interference with prospective economic relations,[57] and such claims had their origin in the same line of cases.[58]  As a result, the elements for these two claims are similar.

41.     Under California law, the elements of the tort of intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."[59]  The elements of the tort of interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."[60]

42.     To withstand a motion to dismiss, the "[p]laintiff must plead sufficient factual allegations about the terms of its enforceable contracts, such that Defendants are sufficiently on notice to defend themselves from the claim of causing the breach or disruption of those contracts."[61]  In its Complaint, PHP failed to allege (a) if any valid contract between the Plaintiff and any third party exists and what, if any, the probability of future economic benefit was; (b)

---

[57] *Kasparian v. Cty. of Los Angeles*, 38 Cal. App. 4th 242, 260 (Cal. Ct. App. 1995).

[58] *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 381-91 (Cal. Ct. App. 1995).

[59] *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126 (Cal. 1990).

[60] *Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521-22 (Cal. Ct. App. 1996).

[61] *See Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1012 (N.D. Cal. 2013).

what, if any, knowledge the Contractor Defendants had of PHP's alleged contracts with any third

party; (c) when or how the Contractor Defendants allegedly induced the third person to breach the

alleged contract; and (d) how any of the Contractor Defendants' alleged actions caused PHP any

damage.  Because PHP failed to plead sufficient factual allegations to satisfy the elements of these

Claims, PHP's Claims for tortious interference with contract and business relationships under

California law are due to be dismissed.

**E.**     **PHP Fails to State a Claim upon which Relief Can Be Granted with Respect to the Alleged Violations of the Defense of Trade Secret Act and Uniform Trade Secret Act (Counts Five and Nine)**

43.     To state a claim for trade secret misappropriation under the Defense of Trade Secret

Act (the "<u>DTSA</u>"), a plaintiff must plead facts from which the court can plausibly infer that (1) the

plaintiff possessed a trade secret and that (2) the defendants misappropriated the trade secret.[62]  In

order to make a claim for misappropriation under the DTSA the "owner of a trade secret that is

misappropriated may bring a civil action ... if the trade secret is related to a product or service used

in, or intended for use in, interstate or foreign commerce."[63]  The DTSA defines misappropriation

to be "the improper acquisition or unauthorized disclosure or use of trade secrets."[64]

44.     Texas has adopted and codified the Uniform Trade Secrets Act into the

Texas Uniform Trade Secrets Act ("<u>TUTSA</u>").  PHP asserts its Claim for violation of the Uniform

Trade Secrets Act without reference to the TUTSA; however, based on the Complaint, it can be

assumed the TUTSA is the relevant statute.  To state a claim for trade secret misappropriation

under the TUTSA, a plaintiff must show: "(a) a trade secret existed; (b) the trade secret was

---

[62] *See* 18 U.S.C. § 1836.

[63] See 18 U.S.C. § 1836(b)(1).

[64] 18 U.S.C. § 1839(5).

acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff."[65]

45.     Texas has defined a trade secret as "the whole or any part of any scientific or technical information, design, process, procedure, formula, or improvement that has value and that the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes."[66]  In this case, PHP failed to identify the alleged trade secrets with the requisite specificity.[67]

46.     PHP attempts to mischaracterize information—specifically, the identities of its Independent Contractor agents and their compensation—as trade secrets.  This information allegedly qualifying as "trade secrets" was previously disclosed to the Contractor Defendants during their relationship with PHP and is accessible to anyone through a variety of public means.  PHP fails to show that (i) it possesses any information that would properly qualify as a trade secret, and (ii) the Contractor Defendants misappropriated these alleged trade secrets.  Because PHP failed to adequately plead each element to succeed on a claim under the DTSA or TUTSA, the Court should dismiss Counts Five and Nine of the Complaint.

**F.     In Addition to the Reasons Stated Above, PHP's Tort Claims Should Be Dismissed Because They Are Not Identifiable nor Distinct from PHP's Breach of Contract Claims**

47.     The economic loss rule is a defense that bars negligence and certain other tort claims (such as tortious interference) for recovery of economic loss when the loss is limited to the

---

[65] *Spear Mktg, Inc. v. BancorpSouth Bank*, 791 F.3d 586, 600 (5th Cir. 2015) (construing Texas law).

[66] *See* TEX. PENAL CODE § 31.05(a)(4).

[67] *See, e.g., Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 701 (S.D. Tex. 2011) (dismissing misappropriation of trade secrets claim because plaintiff failed to "fully identif[y] the specific trade secret they claim to have been stolen") (citing *Twombly*, 550 U.S. at 555)); *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. 11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (dismissing misappropriation of trade secrets claim because plaintiff "failed to identify the specific trade secret information it claims has been misappropriated") (citing *Pension Advisory Group*, 771 F. Supp. 2d at 701)).

subject matter of a contract.  Contractual relationships may create duties under both contract and tort law.[68]  The acts of a party may breach duties in tort or contract alone, or simultaneously in both.[69]  The Texas Supreme Court held that when a plaintiff seeks damages for breach of a duty created solely under a contract—as opposed to a duty imposed by law—tort damages are unavailable.[70]  In such cases, losses are more appropriately addressed through common-law breach of contract claims than through tort claims.[71]

48.    PHP's tortious interference Claims are precluded by the economic loss rule because the only duties alleged by PHP are rooted in its purported contractual relationship with the the Contractor Defendants.  Under Texas law, tortious interference claims require a special relationship or duty.  "If there is no independent duty, then all contract duties, and all breaches of those duties—no matter how intentional—must be enforced pursuant to contract law."[72]  Here, PHP fails to adequately allege—because it *cannot* allege—that its tortious interference Claims are premised on an independent duty separate and apart from a contractual relationship.  Counts Six and Eight of PHP's Complaint seek to mischaracterize its Claims for breach of contract in an attempt to receive punitive and exemplary damages.

## IV.    CONCLUSION

49.    For the foregoing reasons, the Court should grant the Contractor Defendants' Motion to Dismiss, and PHP's Complaint should be dismissed in its entirety.

---

[68] *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

[69] *Id.*

[70] *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991) (when duty arose solely from contractual promise to publish advertisement, the action was only one for breach of contract); *see also Jim Walter Homes*, 711 S.W.2d at 618 (when injury is solely that parties to construction contract did not get the house they were promised and paid for, that can only be characterized as a breach of contract).

[71] *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011).

[72] *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 794 (Tex. App. 2000) ("[A]bsent a special relationship, Haag cannot be held liable for tortious interference").

Dated: April 13, 2021.                    Respectfully submitted,

                                          **HAYWARD PLLC**

                                          */s/ Zachery Z. Annable*
                                          Zachery Z. Annable
                                          Texas Bar No.: 24053075
                                          ZAnnable@HaywardFirm.com
                                          10501 N. Central Expressway, Suite 106
                                          Dallas, Texas 75231
                                          Tel.: (972) 755-7100
                                          Fax: (972) 755-7110

                                          *Counsel for Tony Rojas, Pamela Krause, Peter
                                          Krause, Kasie Cameron-Perez, Mario Perez, and
                                          Eberardo Duarte*


## CERTIFICATE OF SERVICE

I hereby certify that, on April 13, 2021, a true and correct copy of the foregoing Brief was served electronically upon (i) counsel for Plaintiff PHP Agency, Inc., via the Court's CM/ECF system and (ii) upon all parties registered to receive electronic notice via the Court's CM/ECF system.

                                          */s/ Zachery Z. Annable*
                                          Zachery Z. Annable