UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHP AGENCY, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-00418-X |
| | § | |
| JOSE MARTINEZ AKA TONY | § | |
| MARTINEZ, et al., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are several motions to dismiss [Doc. Nos. 23, 26, and 28] from defendants Tony Rojas, Pamela Krause, Peter Krause, Kasie Cameron-Perez, Mario Perez, Ederardo Duarte, Piedad Murguia, Jose Santiago Murguia, Marco Trujillo, and Jose Patino.[1] Because the motions at Doc. Nos. 26 and 28 "adopt, incorporate herein by reference, and rely on all of the arguments and legal authorities set forth in" the brief supporting the Doc. No. 23 motion, the Court considers these three motions together. Also before the Court are two objections from the plaintiff PHP Agency, Inc. (PHP) [Doc. Nos. 35 and 38], which the Court construes as motions to strike. Finally, before the Court are various defendants' motions to strike [Doc. No. 41 and 47]. After careful consideration, and for the reasons explained below, the Court **GRANTS** PHP's motions to strike [Doc. Nos. 35 and 38], **DISMISSES AS**

---

[1] Also before the Court is the motion to dismiss from defendants Maria Lizarraga and Tony Martinez [Doc. No. 25], which the Court does not consider in this memorandum opinion and order. The Court will address that motion in a subsequent order.

1

**MOOT** the defendants' motions to strike [Doc. Nos. 41 and 47], and **GRANTS IN PART AND DENIES IN PART** the defendants' motions to dismiss [Doc. Nos. 23, 26, and 28].

## I. Factual Background

PHP is a life insurance company structured as a "Field Marketing Organization," which means PHP markets and distributes its insurance products through independent distributors. These independent distributors are called Associates and earn commission on their own sales as well as on the sales of Associates aligned beneath them. The line of Associates below a particular Associate is known as that Associate's "downline organization." The downline organization typically works in an office that is owned or leased by a well-established Associate, who PHP refers to as a Principals, and serves the geographic area in which it is located. PHP maintains a database of its Associates, which includes their rank, contact information, payments history, order history, pricing history, consumer customer contact information, bonus history, and other information. Access to this database is restricted, but PHP permits Associates limited access to it based on their level of authority.

When Associates join PHP, they must agree to PHP's New Associate Agreement. This agreement prohibits Associates from using PHP's proprietary information for improper purposes. It also forbids Associates who leave PHP from soliciting or recruiting other PHP Associates to competing companies for two years after they leave PHP. The agreement also contains a choice of forum provision

requiring the associates to submit to "jurisdiction and venue in Dallas County, Texas for disputes that may arise" under the contract.[2]

The defendants here are all former PHP Associates who agreed to the New Associate Agreement and had access to portions of PHP's database. PHP terminated each of the defendants. After their termination, the defendants joined a competing insurance Field Marketing Organization called Family First Life. PHP alleges that, upon joining Family First Life, the defendants violated their New Associate Agreement with PHP by using the confidential information contained in PHP's database to successfully solicit and recruit other PHP Associates to Family First Life.

PHP now sues the defendants for these actions and presents numerous claims against them. First, PHP claims that the defendants breached their contracts with PHP (the New Associate Agreement) by improperly using the proprietary information in PHP's database (Claim One), recruiting PHP Associates to a competitor (Claim Two), affiliating with First Family Life before leaving PHP (Claim Three), and for violating a provision of the New Associate Agreement requiring them to conduct their business in a "legal, ethical, honest and fair manner and in the best interest of the Associate's clients and PHP" (Claim Four). PHP also claims that the defendants violated the Defense of Trade Secrets Act (Claim Five) and the Texas Uniform Trade

---

[2] Although it does not include the allegation in the amended complaint, PHP contends that this provision of the agreement was also a choice of law clause, designating Texas law as governing any disputes arising under the agreement. Because, as explained below, the Court concludes that a choice-of-law analysis is inappropriate at this stage of the litigation, it need not consider whether it may rely on the choice of law provision—despite its absence from the amended complaint—as part of a document "incorporated into the complaint by reference." *Haddock v. Tarrant Cnty*, 852 F. App'x 826, 829 (5th Cir. 2021).

Secrets Act (Claim Nine).  Finally, PHP brings claims against the defendants of tortious interference with contract (Claim Six), defamation (Claim Seven), and tortious interference with prospective economic advantage (Claim Eight).

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[3]  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]  Although the plausibility standard does not require probability, "it asks for more than a sheer possibility that a defendant has acted unlawfully."[6]  In other words, the standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[7]

---

[3] *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 481–82 (5th Cir. 2021).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id.*

[6] *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

[7] *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 555).

### III.   Analysis

#### A.   Motions to Strike

As a threshold matter, the Court considers PHP's objections [Doc. Nos. 35 and 38], which it construes as motions to strike, and the defendants' motions to strike these objections [Doc. Nos. 41 and 47].  PHP objects to the defendant's introduction of evidence in their reply briefs and accompanying appendixes.  Because at the motion to dismiss stage "our factual universe is bounded by the four corners of the complaint,"[8] the Court agrees with PHP that the defendants' attempts to establish facts beyond those alleged in the complaint are improper at this stage of the litigation.  Accordingly, the Court construes PHP's objections as motions to strike and **GRANTS** them, and strikes the portions of the defendants' reply briefs that contain factual allegations beyond those contained in the complaint, as well as the accompanying appendixes.  The defendants may seek to establish these facts at later, appropriate stage of litigation.

Next, the Court considers the defendants' motions to strike PHP's objections [Doc. Nos. 41 and 47].  The defendants contend that the objections should be struck because they neither constitute proper sur-replies nor are they properly presented motions to strike under the local rules.  Because the Court construes the objections as motions to strike, the Court **DISMISSES AS MOOT** the defendants' motions to strike.

---

[8] *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011).

### B.  Claims Six, Seven, and Eight

The Court first considers PHP's Claims Six, Seven, and Eight. The parties agree that PHP has inadequately pled Claims Six, Seven, and Eight. In admitting these defective pleadings in its response to the defendants' motion to dismiss, PHP seeks leave to amend its complaint a second time to address these defects. Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

The Court **GRANTS** the defendants' motion to dismiss PHP's Claims Six, Seven, and Eight. However, as requested, PHP may file an amended complaint that amends Claims Six, Seven and Eight to cure these defects. If it wishes to do so, PHP must file such an amended complaint within 28 days of this order.

### C.  Claims One, Two, Three, and Four

Next, the Court considers the defendants motion to dismiss as to PHP's Claims One, Two, Three, and Four, all of which arise from the defendants' alleged breach of contract. As an initial matter, the defendants contend that PHP has inadequately pled these claims because it has not produced the actual contracts that the defendants entered with PHP. The defendants point to no legal authority on either a state or federal level to support this argument, and PHP need not produce the actual contracts at the motion to dismiss stage. Unlike the rules of civil procedure for some states, "there is no corresponding Federal Rule of Civil Procedure that requires a copy of the

6

contract be attached to a complaint alleging a breach of contract claim."[9] PHP's allegation that such contracts existed and its quotations from specific provisions of those contracts are sufficient at this stage.

The defendants also argue that PHP has failed to allege in adequate detail the defendants' conduct that constituted breaches of contract, and has instead merely alleged breaches in a general and conclusory fashion. PHP has alleged breaches of specific contractual provisions and explained at a general level how the defendants breached their contracts by improperly taking and using the information in PHP's databases to solicit PHP's associates: "Defendants accessed their back-offices and used the information contained therein to begin soliciting Associates. In fact, Defendants would send out emails, text messages, and other forms of communications to set up private meetings with groups of Associates and solicit them to join [Family First Life]." PHP claims that "many Associates have terminated their relationship with [PHP]" because of these actions and the defendants alleged further use of PHP's bonus and pricing information to convince PHP's associates to join Family First Life. While PHP's allegations certainly lack individualized factual details that may be important as this litigation progress, Rule 8 "does not require detailed factual allegations."[10]  And the defendants provide the Court with no caselaw

---

[9] *Wevercomm Co. v. Fiplex Commc'ns, Inc.*, No. 18-21378-CIV, 2019 WL 2106071, at *2 (S.D. Fla. Feb. 25, 2019).

[10] *Iqbal*, 556 U.S. at 678.

whatsoever where courts have read similar allegations as "an unadorned, the-defendant-unlawfully-harmed-me accusation."[11]

Next, the defendants argue that, notwithstanding any Texas choice-of-law provision in their contracts, California law applies and that the contractual terms underlying PHP's Claims One and Three[12] are void and unenforceable under section 16600 of the California Business and Professions Code. PHP argues that Texas law applies. Both parties undertake detailed factual analyses to support their arguments. Faced with similar situations, numerous courts have concluded "that choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage."[13] Furthermore, the defendants' choice of law analysis—no matter how persuasive it might be—contains various factual allegations beyond those contained in PHP's Amended Complaint and is supported by the declarations that the defendants include in their appendix to their reply brief. Because at the motion to dismiss stage "our factual universe is bounded by the four corners of the complaint,"[14] the Court **DENIES** the defendant's motion to dismiss Claims One, Three, and Nine. The defendants may renew their choice-of-law and section 16600 arguments in a subsequent motion for summary judgment.

---

[11] *Id.*

[12] The defendants raised the same argument with respect to PHP's Claims Six and Eight. Because, as explained above, the Court dismisses these claims with leave to amend on other grounds, it does not list them here.

[13] *Bristol-Myers Squibb Co. v. Matrix Laboratoires Ltd.*, 655 Fed.App'x. 9, 13 (2d. Cir. 2015). *See also Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 42-43 (1st Cir. 2020); *Jones v. Lattimer*, 29 F. Supp. 3d 5, 10 n.3 (D.D.C. 2014).

[14] *Morgan*, 659 F.3d at 401.

### D.  Claims Five and Nine

The Court next turns to PHP's Texas Uniform Trade Secret Act claim, or Claim Nine.[15] The defendants argue that the information contained in PHP's database is outside the scope of "trade secrets" as defined by Texas law. But—as reflected by the defendants' own footnote—the definition of "trade secrets" that the defendants quote comes from the Texas Penal Code.

Although neither party points to it, the Court looks to the applicable (and seemingly broader) definition of "trade secret" contained within the Texas Uniform Trade Secret Act itself:

> "Trade Secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
>
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.[16]

---

[15] The parties apparently agree that Texas' Uniform Trade Secrets Act governs this claim.

[16] TEX. CIV. PRAC. & REM. CODE § 134A.002(6).

Without the benefit of any relevant briefing on this point from the parties, the Court is not prepared to say that the information at issue here necessarily falls outside the scope of this definition of trade secrets.

The defendants also argue that the information at issue here is not a trade secret because it "accessible to anyone through a variety of public means." Public availability of the information in question may certainly be relevant at a later stage in this litigation. But, as PHP points out, at the motion to dismiss stage "our factual universe is bounded by the four corners of the complaint."[17] And the complaint does not suggest that the information at issue here is "accessible to anyone through a variety of public means."

Finally, the defendants appear to argue that, because the defendants had legitimate access to the information at issue during their relationship with PHP, their alleged misuse of that information cannot possibly constitute a "misappropriation" under the Texas Uniform Trade Secrets Act. The defendants cite no legal authority for this argument. Once again, the Court finds the Texas Uniform Trade Secrets Act's definitions section illuminating. The statutory definition of "misappropriation" includes

> disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret.[18]

---

[17] *Morgan*, 659 F.3d at 401.

[18] TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(ii)(b).

Because misuse of a trade secret originally acquired through legitimate means seems to be included in this definition of misappropriation, the Court is not prepared to say that the defendants' alleged conduct lies outside the scope of the Texas Uniform Trade Secrets Act as a matter of law. Accordingly, the Court **DENIES** the defendants' motion as to PHP's Claim Nine.

Finally, the Court turns to PHP's Defense of Trade Secret Act claim, or Claim Five. The defendants'—apparently incorporating their arguments as to PHP's Texas Uniform Trade Secret Act claim—state in conclusory fashion that PHP has failed to make out a Defense of Trade Secret Act claim. Again, the defendants neither provide the Court with meaningful reasoning nor point to legal authority in support of their argument. Accordingly, the Court **DENIES** the defendants' motion to dismiss PHP's Defense of Trade Secret Act claim, or Claim Five.

## IV.   Conclusion

For the foregoing reasons, the Court the Court **GRANTS** PHP's motions to strike [Doc. Nos. 35 and 38], **DISMISSES AS MOOT** the defendants' motions to strike [Doc. Nos. 41 and 47], and **GRANTS IN PART AND DENIES IN PART** the defendants' motions to dismiss [Doc. Nos. 23, 26, and 28]. If it wishes to do so, PHP may amend its complaint as to Claims Six, Seven, and Eight only within 28 days of this order.

**IT IS SO ORDERED** this 10th day of January, 2022.

11

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE