UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PHP AGENCY INC, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | § Civil Action No. 3:21-CV-00418-X |
| | § |
| JOSE MARTINEZ, ET AL., | § |
| | § |
| *Defendants.* | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendants Tony Martinez's and Maria Elizarraga's (referred to by the parties as the "Pitzner Defendants" based on the name of their attorney, Steven R. Pitzner) motion to vacate the clerk's entrance of default against them. [Doc. No. 82]. On March 5, 2022, Plaintiff PHP Agency Inc. ("PHP") requested that the clerk enter default against the Pitzner Defendants after they had failed to timely answer PHP's second amended complaint. [Doc. No. 80]. On March 7, 2022, the clerk entered default against the Pitzner Defendants. [Doc. No. 82]. On March 16, 2022, the Pitzner Defendants filed the present motion to vacate the clerk's entry of default.

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause."[1] In determining whether such good cause exists,

---

[1] The Pitzner Defendants do not address Rule 55(c) or its good cause standard in their briefing. In fact, the only legal authority whatsoever that they cite to is an 83-year-old Texas Supreme Court case, *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124 (Tex. 1939). According to the Pitzner Defendants, "ruling(s) of this Court are to be governed by Texas law," and the Court "is required under Texas law to vacate the clerk entered default judgment in accordance with existing law as stated in [*Craddock*] where the court stated under similar facts that it was an abuse of discretion for the trial court to not grant a new trial under similar circumstances." Doc. No. 84 at 2. But even when Federal

1

courts "consider three non-exclusive factors: 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'"[2] The Fifth Circuit says these three factors are "not talismanic" and should be treated in the disjunctive.[3] Because they are not exclusive factors, the Fifth Circuit also looks to other factors, including whether "the defendant acted expeditiously to correct the default."[4] Regardless of what factors the Court considers, what is "imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default."[5]

Willful neglect is a threshold finding: "when the court finds an intentional failure of responsive pleadings there need be no other finding."[6] The "willfulness factor is reviewed under the 'excusable neglect' standard of Federal Rule of Civil Procedure 60(b)."[7] "Excusable neglect is intended and has proven to be quite elastic

---

Courts are required to apply state substantive law, they still apply federal procedural law. *See, e.g.*, *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.2d 512, 517 (5th Cir. 2015). And the Pitzner Defendants provide absolutely no reason for the Court to think that Federal Rule of Civil Procedure 55(c) is substantive rather than procedural. Moreover, even if the Court were to apply Texas law in considering the Pitzner Defendants' motion, it is not at all clear that *Craddock* would require a vacatur of the clerk's entrance of default.

[2] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 225 (5th Cir. 2018) (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).

[3] *Matter of Dierschke*, 975 F.2d 181, 183–84 (5th Cir. 1992) ("We perceive a variance among our circuit colleagues as to whether the court must consider and note its disposition of all three factors on the record. Decisions of three circuits may be read to require such consideration by the trial court. Others have treated the factors in the disjunctive. We find the latter course more persuasive." (internal citations omitted)).

[4] *Id.* at 184.

[5] *Id.*

[6] *Id.*

[7] *Reyelts v. Cross*, 2013 WL 4874090, at *1 (N.D. Tex. Apr. 23, 2013) (citing *CJC Holdings, Inc v. Wright & Lato, Inc.*, 979 F.2d 60, 62 (5th Cir. 1992)). *See CJC Holdings, Inc.*, 979 F.2d at 64 ("We suggest that district courts should use the less subjective excusable neglect standard in the future [when determining whether a party's conduct is willful]."). *See also, e.g.*, *Heeling Sports Ltd. v. Paskey*,

in its application. In essence it is an equitable concept that must take account of all relevant circumstances of the party's failure to act within the required time."[8] It "encompasses 'late filings [that] were due to mistake, inadvertence or carelessness and not to bad faith[.]'"[9]

Here, the Pitzner Defendants offer several explanations for their default. First, although PHP filed its second amended complaint electronically on February 7, 2022, they claim that there were "problems in the filing of same . . . with the federal e-file system such that counsel for the Pitzner Defendant did not receive said filing . . . and were first made aware of same in mid-March 2022."[10] When they did learn of the second amended complaint, the Pitzner Defendants say that they "immediately contacted counsel for PHP and were granted 30 days to file an answer to such amended complaint which would provide the Pitzner Defendants until on or about April 15, 2022 to file an answer."[11] The Pitzner Defendants provide no email documentation or other record to support this claim. And per emails filed by PHP,

---

2008 WL 4566479, at *1 (N.D. Tex. Oct. 10, 2008) ("First, in determining whether a default is willful, the court considers whether there has been excusable neglect.").

[8] *Mattress Giant Corp. v. Motor Advert. & Design, Inc.*, 2008 WL 898772, at *2 (N.D. Tex. Mar. 31, 2008) (quoting 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedures*, § 1165, at 533–34 (3d ed. 2002)).

[9] *Id.* (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[10] Doc. No. 84 at 3. The Pitzner Defendants do not specify what these problems in the e-filing system were in their brief in support of their motion, although in their reply brief they suggest it had to do with their attorney's use of a new email address. *See* Doc. No. 90 at 1. Per emails between the parties filed by PHP, the Pitzner Defendants' attorney, Steven Pitzner, had previously complained to PHP that they had made filings on the Court's e-filing system that had been directed to an old email address. *See* Doc. No. 89-12 at 2. But as PHP explained to Pitzner as far back as December 2021, it was his obligation to provide an update for the Court's system had his email address changed. Doc. No. 89-13 at 1.

[11] Doc. No. 84 at 2.

3

PHP wrote to the Pitzner Defendants' attorney on February 23, 2022, that the Pitzner Defendants' answer to the second amended complaint was overdue and that if none was filed PHP would request a default.[12] PHP again warned the Pitzner Defendants that they were preparing to request a default against them on March 3, 2022, and advised that "if you intend to answer, file your answer immediately because she will be defaulting your clients shortly."[13]

But even if the Pitzner Defendants' contention is accepted as true, based on the timeline they suggest the clerk entered default a week before the Pitzner Defendants claim this extension agreement was reached. Moreover, the Federal Rules of Civil Procedure provide deadlines for the filing of documents with the Court, including answers to a complaint. Parties may move for extensions of those deadlines, and where they agree to those extensions they may do so jointly, but those extensions must be granted by the Court. And the Pitzner Defendants filed no motion for an extension of time to file an answer either before or after the clerk's entrance of default, nor do they offer any explanation for their failure to do so.

The Pitzner Defendants also claim that, after they became aware of the second amended complaint, "PHP somehow sent a proposed order and/or informal request (i.e., no motion was filed in accordance with the court's record) for entry of a clerk's default judgment and apparently PHP secured said clerk's entry of default judgment against said Defendants totally absent any filed motion requesting such default

---

[12] Doc. No. 89-8 at 1.
[13] Doc. No. 89-12 at 3.

4

judgment."[14] According to the Pitzner Defendants, this constitutes a "total denial of due process."[15] But PHP requested that the clerk enter default against the Pitzner Defendants on March 5, 2022, as reflected on the docket for this case.[16] And, based on the Pitzner Defendants' failure to timely answer, the clerk entered default against them on March 7, 2022.[17]

In sum, the Pitzner Defendants have completely failed to demonstrate the requisite good cause under Rule 55(c) for the Court to vacate the clerk's entry of default. They have not addressed whether "setting [the default] aside would prejudice [PHP], and whether a meritorious defense is presented."[18] They have provided the Court with no basis to conclude that their failure to timely answer was "due to mistake, inadvertence or carelessness and not to bad faith,"[19] as the explanations they do provide are either flatly contradicted by the record or insufficient on their own terms. They have not shown that they acted expeditiously to address the default: they apparently took no action after being warned by PHP on February 23, 2022, and again on March 3, 2022, that PHP's request for default was imminent, and then waited a week and a half to file anything with the Court after

---

[14] *Id.* at 2. Throughout their briefing, the Pitzner Defendants often refer to the clerk's entrance of a default as a default judgment. But there has thus far only been an entrance of default and no default judgment in this case.

[15] *Id.*

[16] Doc. No. 80.

[17] Doc. No. 81.

[18] *Koerner*, 910 F.3d at 225.

[19] *Mattress Giant Corp.*, 2008 WL 898772, at *2. They do not, for example, suggest that the failure to answer was due to simple negligence or some other mistake by them or by their attorney.

5

PHP finally requested that the clerk enter default on March 5, 2022, and the clerk actually entered it on March 7, 2022.[20]  And the Pitzner Defendants have not suggested that any other circumstances exist which would warrant a finding of good cause.[21]  Accordingly, the Court cannot conclude that there is good cause to set aside the entrance of default.  So, the Court **DENIES** the Pitzner Defendants' motion.

    **IT IS SO ORDERED** this 14th day of September, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[20] *Matter of Dierschke*, 975 F.2d at 184.

[21] *Id.*

6