UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PHP AGENCY, INC., § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No. 3:21-CV-00418-X |
| § | |
| JOSE MARTINEZ ET AL., § | |
| § | |
| *Defendants.* § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Counter-defendants PHP Agency Inc. ("PHP"), Alejandro Aguilar ("A. Aguilar"), Hector Del Toro ("H. Del Toro"), and Erika Del Toro ("E. Del Toro") move to dismiss the counterclaims of counter-plaintiffs Tony Rojas, Pamela Krause, Peter Krause, Kasie Cameron-Perez, Mario Perez, Eberardo Duarte, Marco Trujillo, Jose Patino, Piedad Murguia, and Jose Santiago Murguia (collectively, the "Hayward Parties").[1] [Doc. Nos. 78, 91, 94, and 111]. The counter-defendants seek the dismissal of the Hayward Parties' Counts 2, 3, 4, 6, 7, and 10.[2] After careful consideration, and for the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions to dismiss. The Court **DENIES** the motions with respect to Count

---

[1] Originally, the Hayward Parties set out these counterclaims in their answer at Doc. No. 70. After PHP filed an amended complaint, Doc. No. 71, the Hayward Parties filed an amended answer at Doc. No. 72 that maintained and incorporated by reference the counterclaims they had laid out at Doc. No. 70. So, while for the sake of convenience the Court simply references the counterclaims as set forth in Doc. No. 70 throughout this opinion, Doc. No. 72 is in fact the live and operative document.

[2] The counter-defendants sought the dismissal of Counts 12 and 13 as well, and, recognizing that their request for punitive damages was not in fact an independent claim, the Hayward Parties withdrew Counts 12 and 13 as independent claims. Doc. No. 84 at 14. The Hayward Parties maintain, however, that they are entitled to punitive damages as relief for their other counterclaims. *Id.* at 15.

1

10, but **GRANTS** the motions with respect to Counts 2, 3, 4, 6, and 7, and **DISMISSES WITHOUT PREJUDICE** those claims. Within 28 days of this order, the Hayward Parties may file an amended countercomplaint that addresses the deficiencies the Court outlines below. This order does not constitute leave to make any other changes to their countercomplaint.

## I.  Factual Background

PHP, a life insurance company structured as a "Field Marketing Organization," markets and distributes its insurance products through independent distributors called Associates. PHP sued a number of its former Associates, including the Hayward Parties, for allegedly violating their New Associate Agreement with PHP. These Associates left PHP and joined a competing insurance Field Marketing Organization called Family First Life. PHP alleges, among other claims, that they used the confidential information contained in PHP's database to successfully solicit and recruit other PHP Associates to Family First Life.

The Hayward Parties contend that this New Associate Agreement is unenforceable, as it effectively "shut[s] out of the life insurance industry altogether those independent contractors who terminate their business relationships with PHP."[3] The Hayward Parties countersued PHP and its employees A. Aguilar, H. Del Toro, E. Del Toro, and R. Aguilar, claiming that the counter-defendants recruited them to PHP "using numerous false promises, including misrepresenting existing agents' income and making promises about business opportunities and lead sources

---

[3] Doc. No. 70 at 19.

that never pan out."[4] Further, the Hayward Parties contend that, after they left PHP, the counter-defendants "withheld commissions, overrides, and residuals earned and owed to the Hayward Parties" and "conspired to take the Hayward Parties' clients and 'books of business[,'] going so far as to contact the Hayward Parties' clients in an attempt to terminate prior policies sold by the Hayward Parties and replace them with a new policy."[5] The Hayward Parties seek a declaratory judgment that the New Associate Agreement is "void and unenforceable"[6] (Count 1) and bring claims for fraud (Count 2), breaches of written and oral contracts (Counts 3 and 4), misclassification as independent contractors (Count 5), violation of California's Unfair Competition Law (Count 6), violation of Texas's Deceptive Trade Practices Act (Count 7),[7] unfair methods of competition and unfair and deceptive acts or practices in the business of insurance pursuant to the California Insurance Code (Count 8), unfair methods of competition and unfair and deceptive acts or practices under the Texas Insurance Code (Count 9), tortious interference with business or contractual relationships (Count 10), and unjust enrichment (Count 11). The counter-defendants seek the dismissal of Counts 2, 3, 4, 6, 7, and 10.

---

[4] *Id.* at 13.

[5] *Id.* at 18.

[6] Doc. No. 70 at 22.

[7] The Hayward Parties bring claims under both California and Texas law because, based only on PHP's original claims and the parties' briefing on the motions to dismiss them (no counterclaims had yet been filed), the Court earlier concluded that a determination of the choice of law in this case was better suited for the summary judgment stage.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[8] To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] Although the plausibility standard does not require probability, "it asks for more than a sheer possibility that a defendant has acted unlawfully."[11] In other words, the standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[12]

## III. Analysis

### A. The Fraud Claims

The Hayward Parties bring claims for fraud (Count 2), violation of California's Unfair Competition Law through acts of fraud (Count 6), and violation of Texas's Deceptive Trade Practices Act through acts of fraud (Count 7). Fraud is subject to a

---

[8] *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 481–82 (5th Cir. 2021) (cleaned up).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10] *Id.*

[11] *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

[12] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

heightened pleading standard and requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."[13] But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[14] "At a minimum, [Federal Rule of Civil Procedure] 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[15] Put simply, "Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud."[16] The Fifth Circuit's "precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[17] When alleged violations of California's Unfair Competition Law are predicated on acts of fraud, Rule 9(b)'s heightened pleading standard applies.[18] The same is true of alleged violations of Texas's Deceptive Trade Practices Act.[19]

---

[13] FED. R. CIV. P. 9(b).

[14] *Id.*

[15] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up).

[16] *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (cleaned up).

[17] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (cleaned up).

[18] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009).

[19] *See, e.g., R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 717 (S.D. Tex. 2020).

5

Here, the factual allegations related to the Hayward Parties' fraud claims are both general and few. The complaint states that PHP failed to disclose to the Hayward Parties

> the expenses the agents will be required to pay while working with PHP, the amount or percentage of commissions the agents will be paid, who will be paying the agents their commission, the commission structure, the agents' ownership of the business or team they create, the amount of money other agents make, [and] the availability of leads from PHP, among other things.[20]

They allege that PHP, via its agents including H. Del Toro, E. Del Toro, R. Aguilar, and A. Aguilar, "made those representations to the Hayward Parties on multiple occasions while recruiting the Hayward Parties to PHP" and repeated them "on numerous occasions at PHP's meetings, on conference calls[,] and as part of in-person conversations including, but not limited to, trainings, recruiting meetings, national conventions, sales conferences or meetings, conference calls[,] and at other conferences and meetings that the Hayward Parties attended."[21] And they allege that these representations were false and that the Hayward Parties relied on them in becoming and remaining associated with PHP.[22] These general allegations fail to meet Rule 9(b)'s heightened pleading standard because they do not "state with particularity the circumstances constituting fraud or mistake";[23] in other words, they do not adequately "set forth the who, what, when, where, and how of the alleged

---

[20] Doc. No. 70 at 14.

[21] Doc. No. 70 at 15. The Hayward Parties refer to these non-disclosures as "representations," and it is not clear from their complaint whether they mean to allege that this information was in fact misrepresented to the Hayward Parties or whether it was simply never disclosed to them.

[22] *Id.* at 15–16.

[23] FED. R. CIV. P. 9(b).

6

fraud."[24]  Accordingly, the Court **GRANTS** the counter-defendants' motions to dismiss as to Counts 2, 6, and 7.[25]

### B. The Contractual Claims

The Hayward Parties bring claims for breaches of written and oral contracts (Counts 3 and 4). To state a claim for breach of contract, a plaintiff must allege "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach."[26] "To sufficiently allege a breach of contract claim, a plaintiff must identify a specific provision of the contract which the defendant allegedly breached."[27]

Here, the breach of written contract claim is based on the New Associate Agreements that PHP entered into with each of the Hayward Parties, which the Hayward Parties contend are invalid. However, the Hayward Parties claim that if the New Associates Agreements are valid,

> PHP has breached the express and the implied terms of those agreements by conspiring to take the Hayward Parties' clients and "books of business[,"] attempting to terminate prior policies sold by the Hayward Parties and replace them with a new policy, improperly withholding commissions, overrides, and residuals earned by the Hayward Parties, among the other actions and conduct described in detail above. This includes implied covenants of due care, loyalty, and good faith and fair dealing.[28]

---

[24] *Thompson*, 125 F.3d at 903 (cleaned up).

[25] The Court need not at this point consider the counter-defendants' alternative argument for dismissal of Counts 6 and 7.

[26] *Lewis v. Bank of America NA*, 343 F.3d 540, 544–45 (5th Cir. 2003).

[27] *Bedgood v. Nissan N. Am., Inc.*, No. A-16-CA-00281-SS, 2016 WL 3566689, at *5 (W.D. Tex. June 24, 2016); *see also, e.g.*, *Whiddon v. Chase Home Finance, LLC*, 666 F. Supp. 2d 681, 692 (E.D. Tex. 2009). The Hayward Parties do not argue or provide the Court with any authority to suggest that this requirement only applies to written contracts and not to oral contracts as well.

[28] Doc. No. 70 at 24.

As for their claim for breach of implied contract, it is not entirely clear what the alleged implied contract is, although it appears to be related to the representations or omissions that form the basis of the Hayward Parties' fraud claims. In any event, the Hayward Parties allege that they entered into oral or implied contracts when the counter-defendants made promises "in order to induce actions on the part of the Hayward Parties and did induce the actions described herein on the part of the Hayward Parties. Accordingly, there was an offer and acceptance for each such contract or agreement, and each such contract or agreement was valid."[29] The alleged breach is stated with similar breadth: "[PHP has] breached the express and the implied terms of these contracts or agreements and damaged the Hayward Parties."[30]

Neither of the Hayward Parties' breach-of-contract claims identifies with any specificity the provisions or terms of the contracts that the counter-defendants allegedly breached.[31] Accordingly, the Court **GRANTS** the counter-defendants' motion to dismiss as to Counts 3 and 4.

### C. Tortious Interference with Contractual Relationships Claim

The Hayward Parties also bring a claim for tortious interference with business or contractual relationships (Count 10). "A claim for tortious interference with existing business relations has the following elements: (1) an existing contract subject

---

[29] *Id.* at 25.

[30] *Id.*

[31] *Bedgood*, 2016 WL 3566689, at *5.

to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss."[32] The plaintiff must plead "an actual contract with an existing client."[33]

Here, the Hayward Parties claim that PHP interfered with contracts between the Hayward Parties, their previous insurance clients, and third-party insurance carriers, and that "PHP, its Agents, officers, and employees conspired to take the Hayward Parties' clients and 'books of business[,]' going so far as to contact the Hayward Parties' clients in an attempt to terminate prior policies sold by the Hayward Parties and replace them with a new policy."[34] The counter-defendants contend that these allegations are insufficient because "nowhere within the four corners of the counterclaim do the Hayward Parties allege the specific contracts and whom they were entered into with, the date, or any other relevant facts."[35] But the counter-defendants provide no authority suggesting that such specific contractual allegations are required; indeed, the caselaw the counter-defendants cite suggests that they are not.[36] The Hayward Parties' allegations of existing contracts with

---

[32] *Priority Design & Serv., Inc. v. Plaza*, No. SA-19-CV-00058-OLG, 2019 WL 2124677, at *4 (W.D. Tex. May 15, 2019).

[33] *Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 659 (W.D. Tex. 2021) (cleaned up).

[34] Doc. No. 70 at 18.

[35] Doc. No. 97 at 6.

[36] *See Nestle*, 516 F. Supp. 3d at 659 (rejecting the claim that plaintiffs failed to "identify a specific party, relationship, or contract that [d]efendants interfered with" as grounds for dismissal where plaintiffs broadly alleged "existing economic relationships with each [] existing customer[]").

existing customers, absent more specific identifying details, may adequately support a claim for tortious interference with existing business relations at this stage.[37]

Accordingly, the Court **DENIES** the motions to dismiss as to Count 10.

### IV.     Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motions to dismiss.  The Court **DENIES** the motions with respect to Count 10, but **GRANTS** the motions with respect to Counts 2, 3, 4, 6, and 7, and **DISMISSES WITHOUT PREJUDICE** those claims.  Within 28 days of this order, the Hayward Parties may file an amended countercomplaint that addresses the deficiencies the Court has described.  This order does not constitute leave to make any other changes to their countercomplaint.

**IT IS SO ORDERED** this 27th day of September, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[37] *See BNSF Ry. Co. v. Panhandle N. R.R. LLC*, No. 4:16-CV-01061-O, 2017 WL 10152282, at *6–7 (N.D. Tex. Sept. 13, 2017) (O'Connor, J.) (holding railroad company's claim for tortious interference with existing business relations was sufficiently pleaded where it generally referred to contracts with passenger and freight customers without further identifying details); *Talon Transaction Techs., Inc. v. StoneEagle Servs., Inc.*, No. 3:13-cv-00902-P, 2013 WL 12172926, at *14 (N.D. Tex. Aug. 15, 2013) (Solis, J.) (denying motion to dismiss claim for tortious interference with existing contracts where plaintiff generally alleged it "had existing contracts in place" with "some of the entities listed in its proprietary database").